# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 1, 2012

## KENNETH LYLE DAVIS v. STATE OF TENNESSEE

### Direct Appeal from the Circuit Court for Madison County
### No. C-10-114    Walter C. Kurtz, Senior Judge

### No. W2011-02049-CCA-R3-PC  - Filed August 2, 2012

A Madison County jury convicted the Petitioner of possession of methamphetamine with intent to sell and/or deliver, possession of unlawful drug paraphernalia, reckless driving, and driving on a canceled, suspended, or revoked license.  The trial court sentenced him to an effective ten-year sentence.  This Court affirmed the Petitioner's convictions and sentences on appeal.  *State v. Kenneth L. Davis*, No W2008-00226-CCA-R3-CD, 2009 WL 160927, at *1 (Tenn. Crim. App., at Jackson, Jan. 23, 2009), *perm. app. denied* (Tenn. June 15, 2009). The Petitioner filed a petition for post-conviction relief in which he alleged that he had received the ineffective assistance of counsel, which the post-conviction court dismissed after a hearing.  On appeal, the Petitioner contends that the post-conviction court erred when it denied his request to amend his petition a third time and when it dismissed his petition. After a thorough review of the record and applicable authorities, we conclude there exists no error in the post-conviction court's judgment.  We, therefore, affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Kenneth Davis, Milan, Tennessee, pro se.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; James G. Woodall, District Attorney General, and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

# I. Facts
## A. Trial

This case arises from a traffic stop, and subsequent search, of the Petitioner that resulted in his arrest for possession of methamphetamine and drug paraphernalia. In our opinion on the Petitioner's direct appeal, we summarized the facts proven at his trial as follows:

On January 21, 2007, the [Petitioner] was stopped by an officer with the Madison County Sheriff's Department. The vehicle was searched, and illegal drugs and paraphernalia were discovered inside. Subsequently, the [Petitioner] was charged with possession of methamphetamine with the intent to sell; possession of methamphetamine with the intent to deliver; possession of drug paraphernalia; reckless driving; and driving on a canceled, suspended, or revoked license. . . . Thereafter, the [Petitioner] filed a motion to suppress the evidence, claiming that he did not voluntarily consent to the search of his automobile.

A hearing on the motion to suppress was conducted on September 20, 2007. Officer Shane Barnes of the Madison County Sheriff's Department testified that, on January 21, 2007, at approximately 6:45 p.m., he was sitting at a red light at the intersection of North Parkway and Highway 70, located in Madison County. It was dark outside, and "medium traffic conditions were present in the area. He observed a Ford Ranger pickup truck make a turn at [a] high rate of speed "onto Parkway going westbound from Highway 70."

According to Officer Barnes, the turn was "real noticeable because of the speed and the fact that [the Petitioner] went over both lanes of traffic into the turn lane, the opposing lane of traffic." He relayed that the [Petitioner's] vehicle "was speeding in an unsafe condition to make that turn in a proper way." Officer Barnes opined that the [Petitioner] was traveling at forty or fifty miles per hour when he made the turn. Moreover, he described the [Petitioner's] driving as erratic, aggressive, and reckless.

Officer Barnes initiated a traffic stop. Officer Barnes explained to the [Petitioner] that he was checking to see if the [Petitioner] "was impaired or the reason why he made a reckless turn." The [Petitioner] was very cooperative, and Officer Barnes did not smell any alcohol on the [Petitioner's] person. The [Petitioner] had a female passenger, Marilyn Riggs, in the vehicle.

2

Officer Barnes requested the [Petitioner's] driver's license. Following a check of the license, Officer Barnes learned that the [Petitioner's] license was suspended due to the Defendant's failure to pay child support. Rather than arresting the [Petitioner], Officer Barnes began issuing a citation and intended on letting the [Petitioner] go. Officer Barnes learned that Ms. Riggs did not have a valid license either. Unwilling to let either individual drive away in the truck, Officer Barnes let the [Petitioner] use his cell phone to have someone come pick them up.

As Officer Barnes "was finishing up the ticket[,]" he asked the [Petitioner] for consent to search the automobile. According to [O]fficer Barnes, the [Petitioner] responded, "Sure. Go ahead. No problem." Officer Barnes waited for another officer to arrive on the scene, which did not take "very long[,]" and he then began searching the vehicle.

Officer Barnes went to the passenger side of the truck, opened the door, and started looking around. He observed a "Game Boy type bag sitting in the middle" between the passenger and the driver. "It was sitting right in the center console." According to Officer Barnes, both individuals would have had access to the bag. Officer Barnes looked inside the bag and discovered approximately 15.9 grams of methamphetamine, six clear glass pipes, one red plastic pipe, a pair of scissors, a white spoon, a small torch, multiple plastic bags of different sizes, a small composition book containing names and home numbers, and a small metal container. When asked the significance of the items found inside the bag, Officer Barnes stated, based on his experience, that the drugs were for resale.

After discovery of the drugs and paraphernalia, both the [Petitioner] and Ms. Riggs were placed under arrest, and the Metro Narcotics Division was contacted. Neither person claimed ownership of the bag.

On cross-examination, Officer Barnes acknowledged that he did not attempt to get written consent from the [Petitioner] before searching the vehicle. He did not do so because the car was equipped with a video system that recorded traffic stops. However, the audio was not working when Officer Barnes stopped the [Petitioner], so there was just a video with no sound.

Officer Barnes also stated that he found a small metal vial in Ms. Riggs' possession.

3

The [Petitioner] testified that Officer Barnes did not request his consent to search his vehicle. Moreover, the [Petitioner] was unaware that his license was suspended. According to the Defendant, Officer Barnes found a metal cylinder under the passenger seat, which "looked like methamphetamine." Officer Barnes asked Ms. Riggs if she was going to claim the cylinder, to which she said no.

On cross-examination, the [Petitioner] acknowledged that he owned the vehicle. He denied that the bag belonged to him.

At the conclusion of the suppression hearing, the trial court determined that the [Petitioner] voluntarily consented to the search of his truck. Thus, the evidence was admissible against the [Petitioner], and he proceeded to trial.

Officer Barnes provided a similar account of the events at trial. At trial, Officer Barnes further opined that the composition book was a "type of thing commonly used by a drug dealer to keep up with his customers." Officer Barnes also testified that the metal container was found underneath the passenger seat and, in his opinion, appeared to contain methamphetamine. He stated that he observed the container "rolling" when Ms. Riggs exited the vehicle. Officer Barnes further noted that the pill bottle was discovered inside the bag where the drugs were found. Inside the pill bottle was a necklace with a heart charm on it.

The videotape was shown to the jury and admitted as an exhibit. Moreover, testing by the Tennessee Bureau of Investigation confirmed that the two bags discovered during the search of the [Petitioner's] truck contained methamphetamine; 13.8 grams in one bag, and 1.5 grams in the other. No finger print analysis was conducted.

The [Petitioner] did not testify at trial or present any evidence in his defense.

Following the conclusion of proof, the jury convicted the [Petitioner] guilty as charged.

## B. Post-Conviction

On April 13, 2010, the Petitioner filed a timely pro se petition for post-conviction, in which he alleged that he had received the ineffective assistance of counsel. On June 3, 2010,

the Petitioner filed his first amended petition for post-conviction relief. On March 1, 2011, the Petitioner filed a second amended petition for post-conviction relief. On June 4, 2011, the trial court entered a scheduling order in which it stated that there would be no further amendments to the post-conviction petition. On September 2, 2011, the Petitioner requested permission to file a third amended petition for post-conviction relief, attempting to add claims that the State violated his due process rights by failing to present exculpatory evidence to the grand jury. The post-conviction court denied his request, stating that the amended petition was untimely filed, that it did not state a cognizable post-conviction claim, and that he had already made a legally similar claim that was properly part of his previously amended post-conviction petition.

At the hearing on the Petitioner's petition, the following evidence relevant to this appeal was presented: The Petitioner, who represented himself, testified that his petition alleged that his trial Counsel was ineffective and that the State withheld exculpatory evidence. The Petitioner testified that Counsel was also ineffective for failing to investigate, interview, and present either Marilyn Riggs or her criminal record. He said that Counsel properly filed a motion for discovery, but the State, in their response, failed to provide him a copy of Riggs's criminal history. At the time of his arrest, the Petitioner said that Riggs was on bond in an unrelated case for possessing methamphetamine. The Petitioner testified that Counsel should have presented this evidence to the jury.

The Petitioner said Counsel was ineffective for failing to request that an independent expert test and examine the drugs involved in this case. He said that the State's expert explained that her test involved adding a chemical to the substance. If the substance turned from orange to brown, then the substances was confirmed to be drugs. The Petitioner said the State's expert also testified that one of the bags only turned a slight "faint orange." The Petitioner took this to mean that the substance was not drugs at all. He said Counsel should have hired an expert to examine the substance in the bags confiscated by police.

The Petitioner contended that the State withheld exculpatory evidence. He said that he requested the maintenance reports on the arresting officer's video equipment. The Petitioner recounted that the officer testified that the audio was not working on his video equipment. The Petitioner stated that, at trial, Officer Barnes testified that he had gotten the audio fixed on his video camera and that the problem was a little transmitter box that was replaced. In fact, according to the Petitioner, a letter from Captain Heavner, which the Petitioner obtained after his trial, showed that the captain had spoken to Officer Barnes and Officer Barnes stated that there was no repair needed. Officer Barnes told Captain Heavner that he replaced the unit's 9 volt battery and that replacing the battery solved the problem.

The Petitioner testified Counsel was ineffective for failing to investigate the traffic stop, failing to investigate the videotape mechanics, and failing to discover the maintenance records of the repairs done on Officer Barnes's video and audio camera.

The Petitioner said that Counsel was ineffective for failing to request that the trial court offer the jury an instruction on the lesser-included offense of simple possession. Further, the Petitioner testified, the cumulative effect of Counsel's errors rendered Counsel's representation ineffective.

During cross-examination, the Petitioner testified that Counsel should have done a more thorough investigation of the video equipment. He said that he had maintained throughout the course of these proceedings that he never gave Officer Barnes consent to search his vehicle. The Petitioner conceded that Counsel filed a motion to suppress to deal with this issue. The Petitioner agreed that the video was shown to the jury at trial and that Officer Barnes testified about what happened on the video. The Petitioner said, however, that the video had been "altered." He said Officer Barnes was unable to produce the video tape of his arrest before the suppression hearing and did not produce it until shortly before his trial. The Petitioner believed that the videotape was altered during the time it was missing.

The Petitioner testified that the video was altered again before it was given to him for the post-conviction proceeding. He said that, on the video he was provided before the post-conviction hearing, he was unable to see things that he recalled from the video shown at his trial. He asked for the chain of custody records from the clerk's office. He noted that the clerk at his trial did not turn in the video immediately after the trial. He said the video was checked out for exactly one year. In order to prove that the video had been altered, the Petitioner said he asked Counsel for the copy of the video contained in Counsel's file. Counsel told him that he had not retained a copy but that he had turned his copy over to the appellate court. The Petitioner testified he knew this to be untrue.

The Petitioner agreed that Riggs never testified at his trial and that the trial court ruled that her criminal history was not relevant. He said that her criminal record, however, should have been admitted to bolster his defense that the drugs belonged to Riggs and not to himself. He noted that Riggs was, at one time, his co-defendant. The Petitioner said that Counsel requested Riggs's criminal record, but he never filed a motion to compel when he did not receive it. He also never went to the Sheriff's Department to request information about any maintenance done on Officer Barnes's vehicle. The Petitioner conceded that there was no maintenance record on Officer Barnes's vehicle but said that he had received a letter stating that Officer Barnes said that no maintenance was necessary.

The Petitioner contended that Counsel failed to investigate the district attorney's "improper influence" on the grand jury to "no true bill . . . Riggs." The evidence, he said, pointed more toward Riggs than to himself. He conceded that this was his defense at trial but said that the jury never heard that Riggs was out on bond for similar offenses when they were arrested in connection with this case.

Counsel testified that he represented the Petitioner when the Petitioner was charged with possession of methamphetamine. Counsel said that Riggs was on bond for a methamphetamine possession charge when she and the Petitioner were arrested for possessing methamphetamine. Counsel testified that he and the Petitioner discussed this, and Counsel requested her criminal record. Counsel said, however, he did not think the criminal record would have been admissible because it was not relevant to whether the Petitioner was guilty in this case.

Counsel agreed that in discovery they had received a laboratory report about the drugs upon which a note was written from the assistant district attorney to someone named "Betty." The handwritten note read, "Betty, we need to no bill Marilyn Riggs." Counsel said that the assistant district attorney told Counsel that they believed that the Petitioner was the one who should have been charged with methamphetamine possession and not Riggs. Counsel reminded the Petitioner that Counsel had no control over this decision. Counsel argued at the Petitioner's trial that Riggs was not at the trial, that she had not been charged with the offense, and that she was "suspicious." Counsel said he sent an investigator to speak to Riggs, who the investigator found uncooperative and unwilling to provide information. Counsel did not subpoena Riggs to testify at the Petitioner's trial based upon the investigator's interview with her. Counsel agreed that his investigator never asked Riggs if Officer Barnes requested consent to search the vehicle.

Counsel said he did not interview or subpoena Steve Dameron, who was the Petitioner's boss. Counsel agreed that, before Officer Barnes found the methamphetamine, Officer Barnes had allowed the Petitioner to use his phone to call for a ride home. The Petitioner called Dameron, who arrived at the scene. Counsel disagreed that Dameron could have offered testimony rebutting Officer Barnes's testimony about where Officer Barnes parked during the stop. Counsel expressed his belief that the video tape of the stop was not altered and that the video tape showed where the officer had parked. Counsel said that Dameron's testimony would not have been relevant to whether the Petitioner was guilty as charged.

Counsel testified that he did not request an independent analysis of the drugs in this case. He agreed that the State's expert testified that there were two separate bags of methamphetamine found, one weighing 13.8 grams and the other weighing 1.5 grams.

Counsel agreed that the State's expert said that one of the bags of methamphetamine only slightly changed color to orange. Counsel recalled that he questioned the expert about this, and she maintained that the substance tested was methamphetamine. Counsel was unsure whether the expert provided a "quantity amount" of the drugs, which may have been relevant to the level of felony for which the Petitioner was charged.

Counsel said he "could have" requested that the trial court instruct the jury on the crime of simple possession. He explained that he did not do so because the Petitioner's defense was that the drugs were not his but that they belonged to Riggs.

Counsel testified he did not, as part of this case, investigate whether the Sheriff's Department kept maintenance records on their vehicles. Counsel opined that Officer Barnes had not intentionally removed the audio from the videotape. Counsel said that he, therefore, did not think an independent analysis of the videotape was necessary.

During cross-examination, Counsel testified that, at the time he represented the Petitioner, he was aware that the Petitioner had filed a complaint against him in the past. He said that he and the Petitioner discussed whether this presented a conflict, but the Petitioner never filed a request to have the Public Defender's office recuse itself. Counsel said he also did not believe that the Petitioner asked him to withdraw as counsel. The idea that Counsel should withdraw did not "c[o]me up" until the appellate stage. Counsel said that, before filing his appeal, the Petitioner asked Counsel to withdraw.

Counsel testified that he investigated this case in a manner similar to how he investigates all cases. He received pretrial discovery and talked with the Petitioner about possible defenses and potential witnesses. Counsel said he received a copy of the videotape recording of the traffic stop. Officer Barnes testified at the Petitioner's probation revocation hearing, and Counsel received a transcript of that testimony. Counsel said he had his investigator track down and speak to Riggs, who was not helpful.

Counsel recalled that the Petitioner expressed his belief that the videotape had been altered. Counsel said that, when he reviewed the videotape, there did not appear to be any alterations to or tampering with the videotape.

The Petitioner then called Anthony Heavner, a captain with the Madison County Sheriff's Department who was in charge of the maintenance records for vehicles owned by the Madison County Sheriff's Department. The captain identified a letter written by Petitioner to the captain requesting that he provide the Petitioner with maintenance records for the video equipment on Officer Barnes's vehicle. Captain Heavner also identified a letter that he sent to the Petitioner in response to his request. That letter stated that he spoke with

8

Officer Barnes, and Officer Barnes informed the captain that there was no repair needed to the video or audio equipment. Officer Barnes said he had replaced the 9 volt battery and that had solved the problem. Captain Heavner agreed that there had been no maintenance or repair to Officer Barnes's equipment.

Captain Heavner testified that the Sheriff's Department's internal policies require that officers report damaged or defective departmental property. Officer Barnes had never reported that his videotape equipment malfunctioned. The captain testified that if Officer Barnes's transmitter box had malfunctioned, there would be a maintenance record to support that it had been fixed. The captain said there was "no repair" done to Officer Barnes's video equipment.

During cross-examination, Captain Heavner testified that his department did not keep records of battery changes in the video equipment.

Officer Shane Barnes testified that he recalled that the videotape of his stop and arrest of the Defendant did not have audio. He explained that the "old video systems" that the department used in 2008 included a body microphone that clipped to the officers' duty belts. Officer Barnes explained that the microphones were powered by a 9 volt battery. At the beginning of each shift, each officer was to check the video systems to ensure they were properly operating. To ensure that his microphone was working, Officer Barnes would turn on the battery pack of the microphone and confirm that the red light illuminated. Officer Barnes said, however, that when a battery in the pack would stop working during the shift, the officer was not provided any notice. The light on the battery would still be illuminated when the battery began to stop working, but the transmitter in the microphone would not transmit the audio to the recorder located in the car. This, Officer Barnes testified, is what happened to his audio equipment during the Petitioner's stop and arrest.

Officer Barnes recalled previously testifying that the microphone worked "off and on." He said this was due, in part, to the fact that the antenna worked like a radio system. Officer Barnes testified that he checked whether the video and audio equipment were working at the beginning of each shift. He said he was aware of the policy about having malfunctioning equipment fixed but said that changing the battery immediately fixed the audio problem.

Officer Barnes testified that he would have given a copy of the tape to the Petitioner as soon as the Petitioner or his attorney requested it. He said that the original videotape would have been made a part of the record. Officer Barnes testified that if the Petitioner failed to make a written request for the video before the probation revocation hearing on April 2, 2007, then the videotape would not have been provided to him before that hearing.

9

Officer Barnes said he did not know whether the videotape had been turned over before the suppression hearing.

Betty Newman testified she was a secretary for the District Attorney's Office. She said her responsibilities included typing the indictments. Newman testified she had never been a grand jury member and had never presented a case before the grand jury. Newman identified a lab report upon which there was a handwritten note that said, "Betty, we need to no bill Marilyn Riggs. Al." Newman explained that this kind of a note would usually mean that there was not enough evidence to prosecute the person because of the lab results or some other reason. Newman would, under these circumstances, be responsible for helping get the bill dismissed.

Al Earls, an attorney in the district attorney's office, testified that he drafted the indictment and presented the case to the grand jury. Earls testified he had no independent recollection of the Petitioner's case and said he did not know if he spoke with Officer Barnes before he presented the case. He said, normally, he would not interview an officer unless he had some question about the case. Earls identified the note on the lab report that he had written telling "Betty" to "no bill" Riggs. Earls said he could only speculate about why he would not have sought an indictment against Riggs but sought one against the Petitioner. He said that the State sometimes only prosecuted the "main Defendant" and, in this case, the main defendant was the Petitioner.

After hearing arguments, the post-conviction court dismissed the Petitioner's petition for post-conviction relief.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it denied his request to amend his petition a third time and when it dismissed his petition for post-conviction relief. He asserts that his trial counsel was ineffective for failing to: (1) adequately investigate the case; (2) have an independent expert analyze the drugs; and (3) request a jury instruction on the lesser-included offense of simple possession. He also asserts that the cumulative effective of Counsel's errors entitles him to post-conviction relief.

## A. Third Amended Petition

The Petitioner contends that the post-conviction court erred when it denied his request to file a third amended petition for post-conviction relief. In the third amended petition, the Petitioner raised the claim that the State failed to present exculpatory evidence to the grand jury that would have affected the grand jury's decision to charge him. His "theory" was that

10

Riggs was found in possession of "some of" the methamphetamine and that she was arrested and given the opportunity to claim ownership of the drugs. When she failed to do so, Officer Barnes arrested both Riggs and the Petitioner. In the amended petition, the Petitioner alleged that the prosecutor failed to inform the grand jury about Riggs's arrest or that she was on bond for a methamphetamine possession charge at the time of her and the Petitioner's arrests. He asserts that the post-conviction court's decision to disallow the amended petition amounts to a ruling on the merits of the claim without an evidentiary hearing.

At the time it denied allowing the third amended petition, the post-conviction court found that the amended petition was untimely filed, it contained claims not properly reviewable pursuant to a petition for post-conviction relief, and that it was based upon claims already asserted in the previous petitions. The post-conviction court, therefore, denied the Petitioner's request to file the amended petition.

On appeal, the Petitioner asserts that the post-conviction court should have allowed him the opportunity to amend his petition. In *Hutcherson v. State*, 75 S.W.3d 929, 931 (Tenn. Crim. App. 2001), we noted that a post-conviction court has discretion to enter an order allowing a petitioner to file an amended petition. *Id.*; *see* T.C.A. § 40-30-106(d) (2006). Citing Tennessee Supreme Court Rule 28, section 6(B)(4)(b), we reiterated "that a trial court must not dismiss a pro se petition 'for failure to follow the prescribed form until the court has given petitioner a reasonable opportunity to amend the petition with the assistance of counsel.'" *Hutcherson*, 75 S.W.3d at 931.

We conclude that, in this case, the Petitioner was afforded a reasonable opportunity to amend his pro se petition. After receiving the Petitioner's original petition for post-conviction relief and his first amended petition, both of which were filed pro se, the post-conviction court appointed the Petitioner counsel. The Petitioner requested to represent himself and filed a second amended petition. The trial court informed the Petitioner that there would be no more amended petitions allowed. The Petitioner then filed a third amended petition for post-conviction relief. We have recently held, "While courts should be and are more lenient in construing pro se filings, no court can simply ignore the failure to provide any factual support whatsoever for a claim raised in a pro se post-conviction petition." *State v. Xavier C. Parks*, No. W2007-00142-CCA-R3-PC, 2008 WL 648937, at *1 (Tenn. Crim. App., at Jackson, March 11, 2008). The post-conviction court in this case allowed the Petitioner a reasonable opportunity to amend his petition and also determined that the issues raised in the third amended petition for post-conviction relief were not colorable. The trial court did not abuse its discretion in this regard. The Petitioner is not entitled to relief on this issue.

**B. Ineffective Assistance of Counsel**

11

The Petitioner contends that his trial counsel was ineffective for failing to: (1) adequately investigate his case; (2) request or obtain an independent analysis on the drugs found in the Petitioner's vehicle; and (3) request a jury instruction on the lesser-included offense of simple possession. He further contends that the cumulative effect of Counsel's errors entitles him to post-conviction relief.

To obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The Petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578–79 (Tenn. 1997). A post-conviction court's factual findings are subject to *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can only be overcome when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

Both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution guarantee the right of a criminally accused to representation. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that trial counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

12

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or the services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, "the reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n. 38 (1984)). We should not deem that counsel was ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

### 1. Investigation

The Petitioner contends Counsel was ineffective because he failed to adequately investigate the following: the circumstances surrounding the traffic stop; the videotape

mechanics; and police department maintenance records. The Petitioner notes that Officer Barnes testified during the suppression hearing, explaining the equipment malfunction by saying "[I]t's a little transmitter. It was in the transmitter box and they had to replace that. That was fixed." The Petitioner states that Counsel failed in his duty to investigate whether there were any maintenance records indicating that the transmitter box had been replaced. The State counters that Counsel's explanation for not pursing the circumstances surrounding the traffic stop and the malfunctioning audio equipment was reasonable and that the Petitioner had not proven that he was prejudiced by Counsel's representation.

The post-conviction court found:

When [P]etitioner was arrested, the arrest was video-taped, but the audio was not functional. Petitioner claims that the officer "lied" about this and that the audio would have proven that he did not consent to the search. The officer explained that his transmitter was not functional.

Petitioner says his lawyer should have investigated and found the maintenance records for the police car, which would have impeached the officer's testimony. The proof, however, was that there were no maintenance records, as was explained at the hearing. The problem with the transmitter was a battery problem. The battery was later replaced. If the trial lawyer had gone to the sheriff's maintenance shop for the records, he would have found none.

There was a minor inconsistency in the officer's explanation for the failure of his transmitter between his suppression hearing testimony and the explanation at trial. Both explanations, however, were consistent with a bad battery. The issue is expanded way out of proportion by the [P]etitioner. Trial counsel was certainly not responsible for the officer's testimony, and there were no maintenance records to find. Furthermore, consent to search was not an issue before the jury. That issue had already been resolved at the suppression hearing.

We agree with the post-conviction court that the Petitioner has not proven by clear and convincing evidence that Counsel was ineffective in this regard. The evidence proved that the audio equipment malfunctioned because of a low battery. Officer Barnes changed the battery, which did not produce any maintenance records for Counsel to find. With regard to any claim about Counsel's failure to investigate Riggs, Counsel sent an investigator to speak with Riggs. She answered "I don't know" or "no" to each of the investigator's questions. Counsel did not think, with good reason, that she would be a helpful witness for the Petitioner. We conclude that Counsel's representation was not ineffective based upon his

14

investigation and that the Petitioner has not proven that he was prejudiced. He is not entitled to relief on this issue.

## 2. Independent Analysis

The Petitioner contends that Counsel was ineffective for failing to request or obtain an independent analysis of the drugs in the Petitioner's vehicle. He asserts that the State's expert testified that one of the bags of drugs only slightly changed to an orange color. The Petitioner asserts that this showed that the bag did not contain drugs at all, and Counsel should have requested an independent analysis of the drugs. The State counters that the Petitioner has not proven that Counsel was ineffective or that he was prejudiced by Counsel's representation in this regard.

The post-conviction court found that Counsel's explanation of why he did not employ the services of an independent expert was "reasonable." The post-conviction court said that the Petitioner's defense was premised upon the fact that the drugs belonged to Riggs and not to him. As such, the court found that any proof about the weight of the drugs or independent testing verifying that the substance was, in fact, drugs, was not relevant to that defense. Further, the post-conviction court noted that the Petitioner had offered no proof at the post-conviction proceeding that the drugs seized were not methamphetamine or that the weight was different from what the State had indicated at trial.

We conclude that the Petitioner has not proven by clear and convincing evidence that Counsel was ineffective for failing to obtain the services of an independent expert. As noted by the trial court, the Petitioner's defense was based upon the assertion that the drugs did not belong to him. This strategy did not require that Counsel prove that the substance was not drugs or that it weighed less than the State indicated. Further, the Petitioner has not proven that he was prejudiced. He has offered no proof that the substances were not methamphetamine or that they weighed less than the State's expert indicated at trial. The Petitioner is not entitled to relief on this issue.

## 3. Jury Instruction

The Petitioner next contends that Counsel was ineffective for failing to request a jury instruction on the lesser-included offense of simple possession. The Petitioner concedes that the jury instructions are not a part of the record but says that he has requested to multiple courts, including the post-conviction court and this Court, that they be transcribed but that his requests have been denied. About this issue, the post-conviction court held:

In this regard, the [P]etitioner has misinformed the Court. Simple

15

possession was instructed.  *See* TR p. 114.

Our review of the record indicates that the evidence does not preponderate against the post-conviction court's finding that the jury was instructed on the crime of simple possession. The Petitioner is not entitled to relief on this issue.

### 4.  Cumulative Effect

The Petitioner contends that the cumulative effect of Counsel's errors rendered Counsel's representation ineffective.  Because we have concluded that Counsel did not commit any of the errors alleged by the Petitioner, we conclude the Petitioner is not entitled to relief based upon the cumulative effect of those errors.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court did not err when it dismissed the Petitioner's petition for post-conviction relief.  As such, we affirm the judgment of the post-conviction court.


_____
ROBERT W. WEDEMEYER, JUDGE

16